WILLIAM E. FORTUNE v. MARY L. FORTUNE

December 28, 1973

*Nadeau, Nadeau, Cullimore and Gray (Mr. J. Paul Nadeau* orally) for the plaintiff.

*Casassa and Mulherrin (Mr. Joseph P. Mulherrin* orally) for the defendant.

GRIMES, J. These transfers involve questions of custody and support in a libel for divorce and the denial of plaintiff's motion for modification of the original orders.

After a hearing in No. 6609 before a Master *(Leonard C. Hardwick,* Esq.), a decree was entered by which a divorce was decreed on the ground of irreconcilable differences; custody of the minor son, then about four years of age, was awarded to the defendant subject to visitation rights; plaintiff was ordered to pay $35 per week for the support of the child and each party was ordered to pay one-half the taxes, mortgage payments and insurance on the real estate in which defendant was permitted to remain with the provision for its sale and equal division of the proceeds in the event she vacated the premises. The parties had stipulated that custody be determined by a panel of three doctors but the doctors were unable to agree and recommended that it be decided by the court. In the meantime one of the doctors referred

the child to Child Services of New Hampshire, a private agency.

There were accusations back and forth on the question of custody, which it would serve no purpose to detail here. There was a probation report recommending custody in the welfare department with placement with the mother. There was evidence that before proceedings began, the father had taken the child to Florida and the mother went after him. The master found that the father was capable, suitable and fit to have custody. He also found that on several occasions the mother had locked the child outside the house unattended; however, there was evidence that he was in a fenced-in yard and that his exclusion from the house was only for a few minutes. The master's report recommending custody in the mother was dated June 6, 1972. Plaintiff objected to the report but it was approved and a decree was entered in accordance therewith on July 5, 1972. On July 19, defendant moved to have payments made through the probation department and to have plaintiff bring up to date his payments regarding the real estate, which motion was granted July 24, 1972.

By motion dated July 31, 1972, No. 6609a, plaintiff moved to modify the decree as to custody and to have defendant found in contempt for refusal to permit visitation. This was followed on August 9, 1972, by a motion to hold plaintiff in contempt for failure to bring up to date his payments regarding the house. The custody question was referred to the probation department for further investigation. A hearing was held before the same master on November 1, 1972, and continued to November 6, 1972. The regional director of Child Services, who did not testify at the prior hearing, testified at this hearing regarding two interviews with the father and child. She described the child on the first visit as a "very constricted little boy". She said he did not show the interest of a normal child. On the second visit a few days later, she said he was improved after having stayed with the father, and that there seemed to be a good relationship between the boy and his father. It was her opinion that the boy's interests would be best served by being placed with his father. Her opinion was based on her observations of

the boy on the two occasions and what she learned from the father and the probation officer. She concluded that the child's condition was caused by the mother and that if his situation was not corrected, he would be damaged.

There was evidence that the mother is very restrictive with the child, not letting him play with other children. On the other hand, it appeared that some of the children with whom it is claimed she would not allow the boy to play are those of witnesses who testified on behalf of the husband and against her. The probation officer's second report describes the mother as having no intention of obeying the court order regarding visitation and states that it was for this reason he recommended custody in the welfare department in his first report. The second report tells of interviews with police who are called by Mrs. Fortune every time the father attempts to visit the child, that the police state that she is most "unreasonable, screaming, hysterical . . . a great problem" and that "they are threatening to take her in for disorderly conduct during the time" of visitations. The probation officer describes the case as "nearly insolvable" with the testimony on both sides "most inconclusive" but states that Mrs. Fortune is causing most of the trouble. It was his opinion that the child can no longer be left in the home of the mother, that the child cannot continue to exist with the constant bickering, fighting and arguments which would be "extremely detrimental" to him. He recommended custody in the welfare department with placement with the father "but under no conditions . . . in the home of the mother".

On the motion for modification of the prior decree, the master recommended that it continue in full force and effect except that visitation rights on Saturday were extended. This recommendation was approved by the court on November 8, only to be followed by a motion on November 10 to set aside the order, which was denied subject to exception. Plaintiff's exceptions were transferred in No. 6609 by *Perkins, J.* and in No. 6609a by *Mullavey, J.*

Plaintiff seeks to have this court rule that awarding custody to the mother was contrary to the best interest of the child, was contrary to all the evidence, and that the trial court abused its discretion. He also contends that the support order was contrary to all the evidence and an abuse of discretion.

Although the exercise of the trial judge's discretion is not "completely unfettered" *(Ballou v. Ballou,* 95 N.H. 105, 58 A.2d 311 (1948)), it cannot be contrary to all the evidence *(Pflug v. Pflug,* 92 N.H. 247, 29 A.2d 422 (1942)), and must have evidence to support it. *Ballou v. Ballou supra.* This court cannot substitute its judgment for that of the trial court. *Ballou v. Ballou supra.*

In seeking to set aside the order of the trial court, the plaintiff relies heavily on the fact that two professionals gave opinions that the child should not be placed with the mother. He argues that this is not a case where there is a conflict among experts and therefore the trial court should not be permitted to make an unexplained award contrary to all the expert evidence. Even though expert evidence is not conflicting, it is still up to the trial court to determine how much weight to give those opinions and in doing so it is entitled to consider the basis of the opinions as well as the qualifications of the experts. In this case, the social worker made a comparison between the attitude of the child on the first and second visits. Her conclusion about the child was based on her observation of him in her office for a very few minutes. She concluded that his improvement on the second visit was due to the fact that he had been living with his father. Relying also on what she learned from plaintiff and the probation officer, she concluded that his condition must have resulted from the mother's treatment of him, which she assumed included unreasonable restrictions on his social contacts and play with other children.

The master also had before him, however, evidence that the child was not unduly restricted by his mother, that he was attending nursery school and enjoys the other children, is completely normal, and that there have been no problems reported by the school. The master heard and saw the witnesses and he stated that he also gave consideration to the probation officer's reports. Although the second report stated in strong terms that the child should not be left with the mother, the master was not required to follow it. The responsibility to decide what was best for the child was for the trial court, after considering all the evidence and relevant factors as it did. We cannot say that the discretion of the

trial court was abused or that the decree was against all the evidence.

On the question of support for the child, the defendant testified that she needed $85 per week to support her four children. She had an order against her former husband in the amount of $53 for the support of his three children. The nursery school for plaintiff's son costs $16.50 per week. Plaintiff has a take-home pay of at least $150 per week, and considering all the evidence, we cannot say that the trial court abused its discretion.

*Exceptions overruled.*

All concurred.